

### The Commonwealth of Massachusetts
### Office of the Attorney General
#### One Ashburton Place
#### Boston, Massachusetts 02108

MAURA HEALEY
ATTORNEY GENERAL

(617) 727-2200
www.mass.gov/ago

July 10, 2018

Chambers of the Honorable Douglas P. Woodlock
United States District Court for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210

     Re:    *Martel et al. v. Healey*, No. 1:17-cv-10248-DPW

Dear Judge Woodlock:

The defendant, Attorney General Maura Healey, submits this letter ahead of the hearing currently scheduled for July 13, 2018 in this matter. The Attorney General writes to notify this Court of legislation recently enacted by the Massachusetts Legislature and signed into law by Governor Baker that affects the plaintiffs' Second Amendment claim in this case. She also writes to explain why the new legislation moots the plaintiffs' claim and requires dismissal of this case.

**The 2018 Legislation.** On July 3, 2018, Governor Baker signed into law H.R. 4670, "An act relative to firearms," now set forth in Mass. St. 2018, c. 123 (attached as Exhibit A, and referred to hereafter as "the 2018 legislation"). The 2018 legislation was enacted in response to *Ramirez v. Commonwealth*, 479 Mass. 331, 94 N.E.3d 809 (2018), *reh'g denied*, June 29, 2018. In *Ramirez*, the Supreme Judicial Court of Massachusetts ("SJC") held that the Commonwealth's prior ban on the civilian possession of electrical weapons, G.L. c. 140, § 131J, violated the Second Amendment to the United States Constitution. *See* 479 Mass. at 337–38, 94 N.E.3d at 815. The SJC cautioned, however, that electrical weapons, "like handguns, are weapons that can injure and kill and, in the wrong hands, can be used for many unlawful or reckless purposes"; for example, "to conceal the torture and abuse of another person." 479 Mass. at 339–40, 94 N.E.3d at 816–17. Thus, although in the SJC's view a total ban on civilian possession of electrical weapons violated the Second Amendment, the SJC delayed its entry of judgment by 60 days to allow the Legislature to "revise the statute in a manner that will preserve its constitutionality." 479 Mass. at 342–43, 94 N.E.3d at 818–19.

The 2018 legislation is the Legislature's response to the SJC's invitation to revise the ban on electrical weapons. Under the new law, which became effective immediately on July 3,

1

2018,[1] Massachusetts now subjects electrical weapons to the same licensing regime as firearms.[2] It accomplishes this objective by striking out the prior ban on electrical weapons in G.L. c. 140, § 131J, and redefining the statutory term "firearm" in G.L. c. 140, § 121, to include "stun gun[s]." *See* Mass. St. 2018, c. 123, §§ 4, 13.[3] "Stun gun," in turn, is defined as "a portable device or weapon, regardless of whether it passes an electrical shock by means of a dart or projectile via a wire lead, from which an electrical current, impulse, wave or beam that is designed to incapacitate temporarily, injure or kill may be directed." Mass. St. 2018, c. 123, § 7. Thus, the new statutory term "stun gun" replaced the prior statutory term "electrical weapons," but it nevertheless includes both stun guns and Tasers. Because stun guns are now subject to the same licensing regime as firearms, any person with a license to carry firearms issued pursuant to G.L. c. 140, § 131 may now purchase and possess stun guns, as newly defined in Mass. St. 2018, c. 123, § 7.

The 2018 legislation also clarifies that stun guns are not subject to the firearms testing protocols set forth in G.L. c. 140, § 123, *see* Mass. St. 2018, c. 123, § 8; that stun guns need not be included on the Roster of Approved Firearms issued pursuant to G.L. c. 140, § 131¾, *see* Mass. St. 2018, c. 123, § 13; and that stun guns need not be sold with a safety device as set forth in G.L. c. 140, § 131K, *see* Mass. St. 2018, c. 123, § 13. The 2018 legislation directs the Secretary of the Executive Office of Public Safety and Security to "promulgate regulations restricting access or use of stun guns by non-licensed persons and establishing minimum safety and quality standards, safe storage requirements, education and safety training requirements and law enforcement training on the appropriate use of stun guns." Mass. St. 2018, c. 123, § 13. Finally, the 2018 legislation requires stun gun owners to "store or keep any stun gun . . . in a locked container accessible only to the owner or other lawfully authorized user." Mass. St. 2018, c. 123, § 14.

**Effect of the 2018 Legislation on This Case.** The 2018 legislation has mooted the plaintiffs' only claim in this case. Each of the plaintiffs holds a license to carry firearms in Massachusetts issued pursuant to G.L. c. 140, § 131. *See* Pltfs' Consolidated Mem., *Martel v. Healey*, 17-cv-10248-DPW, Doc. No. 30, pp. 2–3 & Ex. 1, ¶ 2; Ex. 2, ¶ 3; Ex. 3, ¶ 4. Each expresses a desire to purchase a stun gun or Taser in Massachusetts. *See* Doc. 30, at 1. Under

---

[1] Because the 2018 legislation has an emergency preamble, it took effect immediately upon its signing on July 3, 2018. *See* Mass. Senate, Legislative Drafting and Legal Manual, Part 2.A (3d ed. 2003). The 2018 legislation does specify that some of its sections will take effect 45 days after July 3, 2018, but none of those sections pertain to electrical weapons. *See* Mass. St. 2018, c. 123, § 18.

[2] Massachusetts' firearms licensing regime has been repeatedly upheld against Second Amendment challenges. *See, e.g.*, *Hightower v. City of Boston*, 693 F.3d 61, 71–83 (1st Cir. 2012); *Chief of Police of the City of Worcester v. Holden*, 470 Mass. 845, 857–61, 26 N.E.3d 715, 726–29 (2015).

[3] More specifically, Section 4 of H.R. 4670 inserts the term "stun gun" into the definition of "firearm" set forth in G.L. c. 140, § 121. Attached as Exhibit B to this letter is a copy of the 2016 Official Edition of the General Laws of Massachusetts, which shows where in line 44 of G.L. c. 140, § 121, the term "stun gun" has been inserted into the definition of "firearm."

the 2018 legislation, each of the three plaintiffs may now purchase and possess a stun gun or Taser in Massachusetts, because each holds a license to carry firearms. *See* Mass. St. 2018, c. 123, § 4.

When, as in this case, "an intervening event strips the parties of any legally cognizable interest in the outcome, a case, once live, is rendered moot (and, thus, non-justiciable)." *Barr v. Galvin*, 626 F.3d 99, 104 (1st Cir. 2010) (internal quotation marks omitted). Accordingly, when a statutory or regulatory change eliminates the injury asserted in a lawsuit, the lawsuit becomes moot and the plaintiffs' claims must be dismissed. *See, e.g.*, *U.S. Dep't of the Treasury, Bur. of Alcohol, Tobacco & Firearms v. Galioto*, 477 U.S. 556, 559–60 (1986) (holding constitutional challenges to firearms restrictions for previously-committed individuals moot due to intervening enactment of procedural protections); *United Bldg. & Constr. Trades Council v. Mayor & Council of Camden*, 465 U.S. 208, 213 (1984) (holding that challenge to a duration element of a residency requirement for city employment became moot when ordinance was amended to remove duration element); *Anderson v. City of Boston*, 375 F.3d 71, 93 (1st Cir. 2004) ("[W]hen a governmental entity revised a challenged policy to remove the offending language, plaintiffs' claim for injunctive relief was mooted.") (citing *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 18 (1st Cir. 2002)). This case is no different. Because Massachusetts law no longer forbids the plaintiffs' purchase and possession of a stun gun or Taser, there is no longer a live controversy between the parties and this case must be dismissed for lack of jurisdiction.

Respectfully submitted,

Julia Kobick
Assistant Attorney General
(617) 963-2559

cc: Michelle Scott, Esq.

# Exhibit A

# HOUSE . . . . . . . . . . . . . . . No. 4670

## The Commonwealth of Massachusetts

_____

The committee of conference on the disagreeing votes of the two branches with reference to the Senate amendment (striking out all after the enacting clause and inserting in place thereof the text contained in Senate document numbered 2549) of the House Bill relative to firearms (House, No. 4539), reports recommending passage of the accompanying bill (House, No. 4670). June 27, 2018.

| | |
|---|---|
| Harold P.Naughton, Jr. | Cynthia Stone Creem |
| Marjorie Decker | Karen E. Spilka |
| David T. Viera | Bruce E. Tarr |

FILED ON: 6/27/2018

# HOUSE . . . . . . . . . . . . . . . No. 4670

## The Commonwealth of Massachusetts

———————

**In the One Hundred and Ninetieth General Court
(2017-2018)**

———————

An Act relative to firearms.

*Whereas,* The deferred operation of this act would tend to defeat its purpose, which is to regulate forthwith the possession of firearms in the commonwealth, therefore it is hereby declared to be an emergency law, necessary for the immediate preservation of the public convenience.

*Be it enacted by the Senate and House of Representatives in General Court assembled, and by the authority of the same, as follows:*

1    SECTION 1. Section 121 of chapter 140 of the General Laws is hereby amended by

2  striking out, in line 1, as appearing in the 2016 Official Edition the words "to 131Q" and

3  inserting in place thereof the following words:- to 131Y.

4    SECTION 2. Said section 121 of said chapter 140 is hereby further amended by inserting

5  after the definition of "Conviction", as so appearing, the following definition:-

6    "Court", as used in sections 131R to 131X, inclusive, the division of the district court

7  department or the Boston municipal court department of the trial court having jurisdiction in the

8  city or town in which the respondent resides.

9    SECTION 3. Said section 121 of said chapter 140 is hereby further amended, by inserting

10  after the definition of "Deceptive weapon device", as so appearing, the following 2 definitions:-

11      "Extreme risk protection order", an order by the court ordering the immediate suspension

12    and surrender of any license to carry firearms or firearm identification card which the respondent

13    may hold and ordering the respondent to surrender all firearms, rifles, shotguns, machine guns,

14    weapons or ammunition which he or she then controls, owns or possesses; provided, however,

15    that an extreme risk protection order shall be in effect for up to 1 year from the date of issuance

16    and may be renewed upon petition.

17      "Family or household member", a person who: (i) is or was married to the respondent;

18    (ii) is or was residing with the respondent in the same household; (iii) is or was related by blood

19    or marriage to the respondent; (iv) has or is having a child in common with the respondent,

20    regardless of whether they have ever married or lived together; (v) is or has been in a substantive

21    dating relationship with the respondent; or (vi) is or has been engaged to the respondent.

22      SECTION 4. Said section 121 of said chapter 140 is hereby further amended by striking

23    out, in line 44, as so appearing, the word "a" and inserting in place thereof the following words:-

24    a stun gun or a.

25      SECTION 5. Said section 121 of said chapter 140 is hereby further amended by inserting

26    after the definition of "Machine gun", as amended by section 20 of chapter 110 of the acts of

27    2017, the following 2 definitions:-

28      "Petition", a request filed with the court by a petitioner for the issuance or renewal of an

29    extreme risk protection order.

30      "Petitioner", the family or household member, or the licensing authority of the

31    municipality where the respondent resides, filing a petition.

32    SECTION 6. Said section 121 of said chapter 140 is hereby further amended by inserting

33    after the definition of "Purchase", as appearing in the 2016 Official Edition, the following

34    definition:-

35    "Respondent", the person identified as the respondent in a petition against whom an

36    extreme risk protection order is sought.

37    SECTION 7. Said section 121 of said chapter 140 is hereby further amended by inserting

38    after the definition of "Shotgun", as so appearing, the following 2 definitions:-

39    "Stun gun", a portable device or weapon, regardless of whether it passes an electrical

40    shock by means of a dart or projectile via a wire lead, from which an electrical current, impulse,

41    wave or beam that is designed to incapacitate temporarily, injure or kill may be directed.

42    "Substantive dating relationship", a relationship as determined by the court after

43    consideration of the following factors: (i) the length of time of the relationship; (ii) the type of

44    relationship; (iii) the frequency of interaction between the parties; and (iv) if the relationship has

45    been terminated by either person, the length of time elapsed since the termination of the

46    relationship.

47    SECTION 8. Section 123 of said chapter 140, as so appearing, is hereby amended by

48    striking out, in line 506, the words "or (iii)" and inserting in place thereof the following words:-

49    (iii) a stun gun, as defined in section 121; or (iv).

50    SECTION 9. Section 129B of said chapter 140, as so appearing, is hereby amended by

51    striking out, in line 90, the first time it appears, the word "or".

52    SECTION 10. Said section 129B of said chapter 140, as so appearing, is hereby further

53    amended by inserting after the figure "18 U.S.C. 922(g)(8)", in line 93, the following words:- ;

54    or (C) an extreme risk protection order issued pursuant to sections 131R to 131X, inclusive, or a

55    similar order issued by another jurisdiction.

56    SECTION 11. Section 131 of said chapter 140, is hereby amended by striking out, in line

57    248, as so appearing, the first time it appears, the word "or".

58    SECTION 12. Said section 131 of said chapter 140 is hereby further amended by

59    inserting after the figure "18 U.S.C. 922(g)(8)", in line 251, as so appearing, the following

60    words:- ; or (C) an extreme risk protection order issued pursuant to sections 131R to 131X,

61    inclusive, or a similar order issued by another jurisdiction.

62    SECTION 13. Said chapter 140 is hereby further amended by striking out section 131J

63    and inserting in place thereof the following section:-

64    Section 131J. Sections 131¾, 131K and 131P shall not apply to stun guns. The secretary

65    of public safety and security shall promulgate regulations restricting access or use of stun guns

66    by non-licensed persons and establishing minimum safety and quality standards, safe storage

67    requirements, education and safety training requirements and law enforcement training on the

68    appropriate use of stun guns, which shall require that any stun gun purchased or used by a law

69    enforcement or public safety official include a mechanism for tracking the number of times the

70    stun gun has been fired.

71    SECTION 14. Subsection (a) of section 131L of said chapter 140 is hereby amended by

72    inserting after the first sentence, as appearing in the 2016 Official Edition, the following

73   sentence:- It shall be unlawful to store or keep any stun gun in any place unless such weapon is

74   secured in a locked container accessible only to the owner or other lawfully authorized user.

75        SECTION 15. Said chapter 140 is hereby further amended by inserting after section

76   131Q the following 8 sections:-

77        Section 131R. (a) A petitioner who believes that a person holding a license to carry

78   firearms or a firearm identification card may pose a risk of causing bodily injury to self or others

79   may, on a form furnished by the court and signed under the pains and penalties of perjury, file a

80   petition in court.

81        (b) A petition filed pursuant to this section shall:

82        (i) state any relevant facts supporting the petition;

83        (ii) identify the reasons why the petitioner believes that the respondent poses a risk of

84   causing bodily injury to self or others by having in the respondent's control, ownership or

85   possession a firearm, rifle, shotgun, machine gun, weapon or ammunition;

86        (iii) identify the number, types, and locations of any firearms, rifles, shotguns, machine

87   guns, weapons or ammunition the petitioner believes to be in the respondent's current control,

88   ownership, or possession;

89        (iv) identify whether there is an abuse prevention order pursuant to chapter 209A, a

90   harassment prevention order pursuant to chapter 258E or an order similar to an abuse prevention

91   or harassment prevention order issued by another jurisdiction in effect against the respondent;

92   and

93       (v) identify whether there is a pending lawsuit, complaint, petition, or other legal action

94    between the parties to the petition.

95       (c) No fees for filing or service of process may be charged by a court or any public

96    agency to a petitioner filing a petition pursuant to this section.

97       (d) The petitioner's residential address, residential telephone number and workplace

98    name, address and telephone number, contained within the records of the court related to a

99    petition shall be confidential and withheld from public inspection, except by order of the court;

100   provided, however, that the petitioner's residential address and workplace address shall appear

101   on the court order and shall be accessible to the respondent and the respondent's attorney unless

102   the petitioner specifically requests, and the court orders, that this information be withheld from

103   the order. All confidential portions of the records shall be accessible at all reasonable times to the

104   petitioner and petitioner's attorney, the licensing authority of the municipality where the

105   respondent resides and to law enforcement officers, if such access is necessary in the

106   performance of their official duties. Such confidential portions of the court records shall not be

107   deemed to be public records under the provisions of clause twenty-sixth of section 7 of chapter 4.

108      (e) The court may order that any information in the petition or case record be impounded

109   in accordance with court rule.

110      (f) Upon receipt of a petition under this section and if the petitioner is a family or

111   household member as defined in section 121, the clerk of the court shall provide to the petitioner

112   and respondent informational resources about: (i) crisis intervention; (ii) mental health; (iii)

113   substance use disorders; (iv) counseling services; and (v) the process to apply for a temporary

114   commitment under section 12 of chapter 123.

115        Section 131S. (a) The court shall, within 10 days of receipt of a petition pursuant to

116    section 131R, conduct a hearing on the petition.  Upon receipt of the petition, the court shall

117    issue a summons with the date, time and location of the hearing.  The court shall direct a law

118    enforcement officer to personally serve a copy of the petition and the summons on the

119    respondent, or if personal service by a law enforcement officer is not possible, the court may,

120    after a hearing, order that service be made by some other identified means reasonably calculated

121    to reach the respondent.  Service shall be made not less than 7 days prior to the hearing.

122        (b) Notwithstanding the provisions of subsection (a), the court shall, within 2 days of

123    receipt of a petition made pursuant to section 131R, conduct a hearing on the petition if the

124    respondent files an affidavit that a firearm, rifle, shotgun, machine gun, weapon or ammunition is

125    required in the performance of the respondent's employment.

126        (c) If after the hearing pursuant to subsection (a) or subsection (b), the court finds by a

127    preponderance of the evidence that the respondent poses a risk of causing bodily injury to self or

128    others by having in the respondent's control, ownership or possession a firearm, rifle, shotgun,

129    machine gun, weapon or ammunition, the court shall grant the petition. If the respondent does

130    not appear at the hearing pursuant to subsection (a) or subsection (b), the court shall grant the

131    petition upon a determination that the petitioner has demonstrated by a preponderance of the

132    evidence that the respondent poses such a risk.

133        (d) Upon granting a petition, the court shall issue an extreme risk protection order and

134    shall order the respondent to surrender any licenses to carry firearms, firearms identification

135    cards and all firearms, rifles, shotguns, machine guns, weapons and ammunition which the

136    respondent then controls, owns or possesses, to the licensing authority of the municipality where

137   the respondent resides. The court shall enter written findings as to the basis of its order within 24

138   hours of granting the order.  The court may modify, suspend or terminate its order at any

139   subsequent time upon motion by either party; provided, however, that due notice shall be given

140   to the respondent and petitioner, and the court shall hold a hearing on said motion. When the

141   petitioner's address is confidential to the respondent as provided in subsection (d) of section

142   131R and the respondent has filed a motion to modify the court's order, the court shall be

143   responsible for notifying the petitioner. In no event shall the court disclose any such confidential

144   address.

145        Not less than 30 calendar days prior to the expiration of an extreme risk protection order,

146   the court shall notify the petitioner at the best known address of the scheduled expiration of the

147   order and that the petitioner may file a petition to renew the order pursuant to section 131R.

148        (e) Upon issuing an extreme risk protection order the clerk-magistrate of the court shall

149   transmit 2 certified copies of the order and 1 copy of the petition and summons forthwith to the

150   licensing authority of the municipality where the respondent resides which, unless otherwise

151   ordered by the court, shall serve a copy of the order and petition upon the respondent. Licensing

152   authorities shall establish adequate procedures to ensure that, when effecting service upon a

153   respondent, a law enforcement officer shall, to the extent practicable: (i) fully inform the

154   respondent of the contents and terms of the order and the available penalties for any violation of

155   an order; and (ii) provide the respondent with informational resources, including, but not limited

156   to, a list of services relating to crisis intervention, mental health, substance use disorders and

157   counseling, and a list of interpreters, as necessary, located within or near the court's jurisdiction.

158   The chief justice of the trial court, in consultation with the executive office of public safety and

159   security, and the department of mental health, shall annually update the informational resource

160   guides required under this section.

161       Each extreme risk protection order issued by the court shall contain the following

162   statement: VIOLATION OF THIS ORDER IS A CRIMINAL OFFENSE.

163       (f) Upon receipt of service of an extreme risk protection order, the licensing authority of

164   the municipality where the respondent resides shall immediately suspend the respondent's

165   license to carry firearms or a firearm identification card and shall immediately notify the

166   respondent of said suspension.

167       Upon receipt of service of an extreme risk protection order the respondent shall

168   immediately surrender their license to carry firearms or a firearm identification card and all

169   firearms, rifles, shotguns, machine guns, weapons or ammunition in their control, ownership or

170   possession to the local licensing authority serving the order, in accordance with section 129D;

171   provided, however, that nothing in this section or in said section 129D shall allow the respondent

172   to: (i) transfer any firearms, rifles, shotguns, machine guns, weapons or ammunition required to

173   be surrendered, or surrendered, by the respondent to anyone other than a licensed dealer; or (ii)

174   maintain control, ownership or possession of any firearms, rifles, shotguns, machine guns,

175   weapons or ammunition during the pendency of any appeal of an extreme risk protection order;

176   provided, however, that while the surrender of ownership pursuant to an extreme risk protection

177   order shall require the immediate surrender of any license to carry firearms or a firearm

178   identification card and all firearms, rifles, shotguns, machine guns, weapons or ammunition in

179   the respondent's control or possession, it shall not require the surrender of permanent ownership

180   rights; and provided further that, notwithstanding section 129D, if the licensing authority cannot

181     reasonably ascertain a lawful owner of firearms, rifles, shotguns, machine guns, weapons or

182     ammunition surrendered pursuant to extreme risk protection order within 180 days of the

183     expiration or termination of the extreme risk protection order, the licensing authority may, in its

184     discretion, trade or dispose of surplus, donated, abandoned or junk firearms, rifles, shotguns,

185     machine guns, weapons or ammunition to properly licensed distributors or firearms dealers and

186     the proceeds of such sale or transfer shall be remitted or credited to the municipality in which the

187     licensing authority presides to be used for violence reduction or suicide prevention. Any

188     violation of this subsection shall be punishable by a fine of not more than $5,000, or by

189     imprisonment for not more than 2 ½ years in a house of correction, or by both such fine and

190     imprisonment.

191         (g) Upon receipt of a license to carry firearms or a firearm identification card and any

192     firearms, rifles, shotguns, machine guns, weapons or ammunition surrendered by a respondent

193     pursuant to subsection (f), the licensing authority taking possession of the license to carry

194     firearms or a firearm identification card, and firearms, rifles, shotguns, machine guns, weapons

195     or ammunition shall issue a receipt identifying any license to carry firearms or a firearm

196     identification card and all firearms, rifles, shotguns, machine guns, weapons or ammunition

197     surrendered by the respondent and shall provide a copy of the receipt to the respondent. The

198     licensing authority to which the respondent surrendered a license to carry firearms or a firearm

199     identification card and all firearms, rifles, shotguns, machine guns, weapons or ammunition

200     shall, within 48 hours of the surrender, file the receipt with the court.

201         (h) If a person other than the respondent claims title to any firearms, rifles, shotguns,

202     machine guns, weapons or ammunition required to be surrendered, or surrendered, pursuant to

203     this section, and is determined by the licensing authority to be the lawful owner of the firearms,

204    rifles, shotguns, machine guns, weapons or ammunition, the firearms, rifles, shotguns, machine

205    guns, weapons or ammunition shall be returned to said person; provided, however, that: (i) the

206    firearms, rifles, shotguns, machine guns, weapons or ammunition are removed from the

207    respondent's control, ownership, or possession and the lawful owner agrees to store the firearms,

208    rifles, shotguns, machine guns, weapons or ammunition in a manner such that the respondent

209    does not have access to, or control of, the firearms, rifles, shotguns, machine guns, weapons or

210    ammunition; and (ii) the firearms, rifles, shotguns, machine guns, weapons or ammunition are

211    not otherwise unlawfully possessed by the owner. Any violation of this subsection shall be

212    punishable by a fine of not more than $5,000, or by imprisonment for not more than 2 ½ years in

213    a house of correction, or by both such fine and imprisonment.

214         (i) Upon the expiration or termination of an extreme risk protection order, a licensing

215    authority holding any firearms, rifles, shotguns, machine guns, weapons or ammunition that have

216    been surrendered pursuant to this section shall return any license to carry firearms or firearm

217    identification card and all firearms, rifles, shotguns, machine guns, weapons or ammunition

218    requested by a respondent only after the licensing authority of the municipality in which the

219    respondent resides confirms that the respondent is suitable for a license to carry firearms or a

220    firearm identification card and to control, own or possess firearms, rifles, shotguns, machine

221    guns, weapons or ammunition under federal and state law.

222         Not less than 7 days prior to expiration of an extreme risk protection order, a licensing

223    authority holding any firearms, rifles, shotguns, machine guns, weapons or ammunition that have

224    been surrendered pursuant to this section shall notify the petitioner of the expiration of the

225    extreme risk protection order and the return of a license to carry firearms or firearm

226    identification card and the return of any firearms, rifles, shotguns, machine guns, weapons or

227    ammunition to the respondent.

228         As soon as reasonably practicable after receiving notice of the termination of an extreme

229    risk protection order by the court, a licensing authority holding any firearms, rifles, shotguns,

230    machine guns, weapons or ammunition that have been surrendered pursuant to this section shall

231    notify the petitioner of the termination of the extreme risk protection order and the return of a

232    license to carry firearms or firearm identification card and the return of any firearms, rifles,

233    shotguns, machine guns, weapons or ammunition to the respondent.

234         (j) A respondent who has surrendered a license to carry firearms or firearm identification

235    card and all firearms, rifles, shotguns, machine guns, weapons or ammunition to a licensing

236    authority and who does not wish to have the license to carry firearms or firearm identification

237    card or firearms, rifles, shotguns, machine guns, weapons or ammunition returned or who is no

238    longer eligible to control, own or possess firearms, rifles, shotguns, machine guns, weapons or

239    ammunition pursuant to this chapter or federal law, may sell or transfer title of the firearms,

240    rifles, shotguns, machine guns, weapons or ammunition to a licensed firearms dealer; provided,

241    however, that the respondent shall not take physical possession of the firearms, rifles, shotguns,

242    machine guns, weapons or ammunition. The licensing authority may transfer possession of the

243    firearms, rifles, shotguns, machine guns, weapons or ammunition to a licensed dealer upon said

244    dealer providing the licensing authority with written proof of the sale or transfer of title of the

245    firearms, rifles, shotguns, machine guns, weapons or ammunition from the respondent to the

246    dealer.

247    (k) If the licensing authority cannot reasonably ascertain the lawful owner of any

248    firearms, rifles, shotguns, machine guns, weapons or ammunition surrendered pursuant to this

249    section within 180 days of expiration or termination of the order to surrender the firearms, rifles,

250    shotguns, machine guns, weapons or ammunition the licensing authority may dispose of the

251    firearms, rifles, shotguns, machine guns, weapons or ammunition pursuant to section 129D.

252    Section 131T. (a) Upon the filing of a petition pursuant to section 131R, the court may

253    issue an emergency extreme risk protection order without notice to the respondent and prior to

254    the  hearing required pursuant to subsection (a) of section 131S if the court finds reasonable

255    cause to conclude that the respondent poses a risk of causing bodily injury to self or others by

256    being in possession of a license to carry firearms or a firearm identification card or having in his

257    control, ownership or possession a firearm, rifle, shotgun, machine gun, weapon or ammunition.

258    Upon issuance of an emergency extreme risk protection order pursuant to this section, the

259    clerk magistrate of the court shall notify the respondent pursuant to subsection (e) of section

260    131S. An order issued under this subsection shall expire 10 days after its issuance unless a

261    hearing is scheduled pursuant to subsection (a) or (b) of section 131S or at the conclusion of a

262    hearing held pursuant to said subsection (a) or (b) of said section 131S unless a permanent order

263    is issued by the court pursuant to subsection (d) of said section 131S.

264    (b) When the court is closed for business, a justice of the court may grant an emergency

265    extreme risk protection order if the court finds reasonable cause to conclude that the respondent

266    poses a risk of causing bodily injury to self or others by being in possession of a license to carry

267    firearms or firearm identification card or by having in his control, ownership or possession of a

268    firearm, rifle, shotgun, machine gun, weapon or ammunition. In the discretion of the justice, such

269    relief may be granted and communicated by telephone to the licensing authority of the

270    municipality where the respondent resides, which shall record such order on a form of order

271    promulgated for such use by the chief justice of the trial court and shall deliver a copy of such

272    order on the next court business day to the clerk-magistrate of the court. If relief has been

273    granted without the filing of a petition pursuant to section 131R, the petitioner shall appear in

274    court on the next available court business day to file a petition. Any order issued under this

275    subsection shall expire at the conclusion of the next court business day after the order was issued

276    unless a petitioner has filed a petition with the court pursuant to section 131R and the court has

277    issued an emergency extreme risk protection order pursuant to subsection (a).

278         (c) Upon receipt of service of an extreme risk protection order pursuant to this section,

279    the respondent shall immediately surrender their license to carry firearms or firearm

280    identification card and all firearms, rifles, shotguns, machine guns, weapons or ammunition to

281    the local licensing authority serving the order as provided in subsection (f) of section 131S.

282         Section 131U. (a) On the same day that an extreme risk protection order is issued

283    pursuant to section 131S or section 131T, the clerk magistrate of the court shall forward a copy

284    of such order to: (i) the licensing authority; (ii) the commissioner of probation; (iii) the

285    department of criminal justice information services who shall transmit the report, pursuant to

286    paragraph (h) of section 167A of chapter 6, to the attorney general of the United States to be

287    included in the National Instant Criminal Background Check System; and (iv) any other federal

288    or state computer-based systems used by law enforcement or others to identify prohibited

289    purchasers of firearms. Upon the expiration or termination of an extreme risk protection order

290    issued pursuant to section 131S or section 131T, the clerk magistrate of the court shall notify (i)

291    the licensing authority; (ii) the commissioner of probation; (iii) the department of criminal justice

292    information services who shall transmit the report, pursuant to paragraph (h) of section 167A of

293    chapter 6, to the attorney general of the United States to be included in the National Instant

294    Criminal Background Check System; and (iv) any other federal or state computer-based systems

295    used by law enforcement or others to identify prohibited purchasers of firearms that the order has

296    been terminated or has expired.

297        Section 131V. (a) Any person who files a petition for an extreme risk protection order,

298    knowing the information in the petition to be materially false or with an intent to harass the

299    respondent, shall be punished by a fine of no less than $2,500 and no more than $5,000 or by

300    imprisonment for no more than 2 ½ years in the house of correction or by both such fine and

301    imprisonment.

302        Section 131W. The chief justice of the trial court, in consultation with the chief justice of

303    the district court and the chief justice of the Boston municipal court, shall promulgate rules,

304    regulations and policies and shall develop and prepare instructions, brochures, petitions, forms

305    and other material required for the administration and enforcement of sections 131R to 131X,

306    inclusive, which shall be in such form and language to permit a petitioner to prepare and file a

307    petition pro se.

308        Section 131X.  (a) Sections 131R to 131Y, inclusive, shall not affect the ability of a law

309    enforcement officer to remove firearms, rifles, shotguns, machine guns, weapons or ammunition

310    from any person or conduct any search and seizure for firearms, rifles, shotguns, machine guns,

311    weapons or ammunition pursuant to other lawful authority.

312      (b) Nothing in sections 131R to 131Y, inclusive, shall supersede or limit a licensing

313    authority's ability to suspend or revoke a license that the licensing authority has issued pursuant

314    to other lawful authority.

315      (c) Sections 131R to 131Y, inclusive, shall not impose any duty on a family or household

316    member to file a petition and no family or household member shall be held criminally or civilly

317    liable for failure to petition.

318      (d) The supreme judicial court and the appeals court shall have concurrent jurisdiction to

319    review any proceedings had, determinations made, and orders or judgments entered in the court

320    pursuant to section 131S or section 131T. The supreme judicial court or the appeals court,

321    subject to the provisions of section 13 of chapter 211A may by rule vary the procedure

322    authorized or required for such review upon a finding that the review by the court will thereby be

323    made more simple, speedy and effective.

324      Section 131Z. The court shall annually, on or before December 31, issue a report on the

325    use of extreme risk protective orders. The report shall be submitted to the executive office of

326    public safety and security; the chairs of the joint committee on public safety and homeland

327    security; the chairs of the joint committee on the judiciary; the chairs of the joint committee on

328    mental health substance use and recovery; and clerks of the senate and the house of

329    representatives. The report shall include but shall not be limited to the following information:

330      (1) the number of extreme risk protective order petitions filed;

331      (2) the number of extreme risk protective order petitions that lead to a respondent's

332    surrender pursuant to section 131S;

333        (3) the number of extreme risk protective order petitions that are heard but not granted;

334        (4) the number of emergency extreme risk protective order petitions filed;

335        (5) the number of emergency extreme risk protective order petitions that lead to a

336   respondent's surrender pursuant to 131T;

337        (6) the number of emergency extreme risk protective order petitions that are heard but not

338   granted;

339        (7) the number of extreme risk protective order or emergency extreme risk protective

340   order petitions filed that are deemed to be fraudulent;

341        (8) the race and ethnicity of the petitioner and respondent;

342        (9) the gender and gender identity of the petitioner and respondent;

343        (10) the data on the duration of extreme risk protection orders.

344        (11) The number of instances in which an order has been terminated or otherwise

345   modified prior to its original expiration date; and

346        (12) The number of instances in which a fine has been assessed for a filed petition that

347   was deemed to be fraudulent.

348        SECTION 16. Notwithstanding any general or special law to the contrary, the department

349   of mental health shall develop county based informational resources about crisis intervention,

350   mental health, substance use disorders, counseling services, interpreter services, the process to

351   apply for temporary commitment under section 12 of chapter 123 of the General Laws and other

352   relevant resources that serve each county. The department shall provide said county based

353    informational resources to the chief justice of the trial court who shall distribute the

354    informational resources to each district and municipal court in the Commonwealth for

355    distribution pursuant to subsection (f) of section 131R of the chapter 140 of the General Laws.

356    The department of mental health shall develop county based informational resources required

357    pursuant to this section within 45 days of the effective date of this act.

358        SECTION 17. Notwithstanding any general or special law to the contrary, the chief

359    justice of the trial court shall promulgate rules, regulations and policies and shall develop and

360    prepare instructions, brochures, petitions, forms and other material required pursuant to section

361    131X of chapter 140 of the General Laws within 45 days of the effective date of this act.

362        SECTION 18.  Sections 1, 2, 3, 5, 6, 9, 10, 11, 12, 15, 16 and 17 shall take effect 45 days

363    after passage.

# Exhibit B

2016
OFFICIAL
EDITION



# GENERAL LAWS
## OF
# MASSACHUSETTS

PREPARED UNDER THE DIRECTION OF
THE GENERAL COURT

9

CHAPTERS
119A–140A

[Chap. 140]

m a pro-          9
                 10

es; contents;

or a sta-         1
z boards          2
o create          3
or town           4
and one           5
isions of         6
granted           7
shall be          8
and the           9
ulations         10
em nec-          11
may be           12
e city or        13
ime and          14
ast four-        15
' the ap-        16
such a           17
no event         18
ich such         19
                 20

lding regula-

accepted          1
e select-         2
ngine or          3
fore the          4
danger-           5
d an or-          6
to the            7
ion and           8
ey deem           9
m clerk          10
serve on         11
s doings         12
ereof to         13
                 14

## 140:117. Appeal; injunction

Section 117. An owner of a steam engine or furnace who is ag-
grieved by such order may have the remedy prescribed by section
two of chapter one hundred and thirty-nine. The superior court, on
granting the application for a jury, may issue an injunction restrain-
ing the further use of such engine or furnace until the final determi-
nation of the application.

## 140:118. Stationary engines; distance from buildings

Section 118. In a town which accepts this section or has accepted
corresponding provisions of earlier laws, a stationary engine, pro-
pelled by steam or other motive power, shall not be erected or put up
for use within five hundred feet of a dwelling house or public build-
ing unless a license therefor has been first granted and recorded in
the manner provided in section one hundred and fifteen.

## 140:119. Nuisance; removal

Section 119. An engine or furnace erected or used contrary to sec-
tion one hundred and fifteen, one hundred and sixteen or one hun-
dred and eighteen shall be deemed a common nuisance; and the
aldermen or selectmen may remove the same in the same manner as
boards of health may remove nuisances under sections one hundred
and twenty-three to one hundred and twenty-five, inclusive, of chap-
ter one hundred and eleven.

## 140:120. Repealed, 1930, 399, Sec. 3

## 140:121. Firearms sales; definitions; antique firearms; application of law; exceptions

Section 121. As used in sections 122 to 131Q, inclusive, the fol-
lowing words shall, unless the context clearly requires otherwise,
have the following meanings:—

"Ammunition", cartridges or cartridge cases, primers (igniter), bul-
lets or propellant powder designed for use in any firearm, rifle or
shotgun. The term "ammunition" shall also mean tear gas car-
tridges.

"Assault weapon", shall have the same meaning as a semiauto-
matic assault weapon as defined in the federal Public Safety and
Recreational Firearms Use Protection Act, 18 U.S.C. section 921(a)
(30) as appearing in such section on September 13, 1994, and shall
include, but not be limited to, any of the weapons, or copies or dupli-
cates of the weapons, of any caliber, known as: (i) Avtomat
Kalashnikov (AK) (all models); (ii) Action Arms Israeli Military In-

1141

dustries UZI and Galil; (iii) Beretta Ar70 (SC–70); (iv) Colt AR–15;   15
(v) Fabrique National FN/FAL, FN/LAR and FNC; (vi) SWD M–10,   16
M–11, M–11/9 and M–12; (vi) Steyr AUG; (vii) INTRATEC TEC–9,   17
TEC–DC9 and TEC–22; and (viii) revolving cylinder shotguns, such   18
as, or similar to, the Street Sweeper and Striker 12; provided, how-   19
ever, that the term assault weapon shall not include: (i) any of the   20
weapons, or replicas or duplicates of such weapons, specified in ap-   21
pendix A to 18 U.S.C. section 922 as appearing in such appendix on   22
September 13, 1994, as such weapons were manufactured on October   23
1, 1993; (ii) any weapon that is operated by manual bolt, pump, le-   24
ver or slide action; (iii) any weapon that has been rendered perma-   25
nently inoperable or otherwise rendered permanently unable to be   26
designated a semiautomatic assault weapon; (iv) any weapon that   27
was manufactured prior to the year 1899; (v) any weapon that is an   28
antique or relic, theatrical prop or other weapon that is not capable   29
of firing a projectile and which is not intended for use as a functional   30
weapon and cannot be readily modified through a combination of   31
available parts into an operable assault weapon; (vi) any semiauto-   32
matic rifle that cannot accept a detachable magazine that holds more   33
than five rounds of ammunition; or (vii) any semiautomatic shotgun   34
that cannot hold more than five rounds of ammunition in a fixed or   35
detachable magazine.   36

"Conviction", a finding or verdict of guilt or a plea of guilty,   37
whether or not final sentence is imposed.   38

"Deceptive weapon device", any device that is intended to convey   39
the presence of a rifle, shotgun or firearm that is used in the commis-   40
sion of a violent crime, as defined in this section, and which presents   41
an objective threat of immediate death or serious bodily harm to a   42
person of reasonable and average sensibility.   43

"Firearm", a pistol, revolver or other weapon of any description,   44
loaded or unloaded, from which a shot or bullet can be discharged   45
and of which the length of the barrel or barrels is less than 16 inches   46
or 18 inches in the case of a shotgun as originally manufactured;   47
provided, however, that the term firearm shall not include any   48
weapon that is: (i) constructed in a shape that does not resemble a   49
handgun, short-barreled rifle or short-barreled shotgun including,   50
but not limited to, covert weapons that resemble key-chains, pens,   51
cigarette-lighters or cigarette-packages; or (ii) not detectable as a   52
weapon or potential weapon by x-ray machines commonly used at   53
airports or walk- through metal detectors.   54

"Gunsmith", any person who engages in the business of repairing,   55
altering, cleaning, polishing, engraving, blueing or performing any   56
mechanical operation on any firearm, rifle, shotgun or machine gun.   57

"Imitation firearm", any weapon which is designed, manufactured    58
or altered in such a way as to render it incapable of discharging a    59
shot or bullet.    60

"Large capacity feeding device", (i) a fixed or detachable magazine,    61
box, drum, feed strip or similar device capable of accepting, or that    62
can be readily converted to accept, more than ten rounds of ammuni-    63
tion or more than five shotgun shells; or (ii) a large capacity ammu-    64
nition feeding device as defined in the federal Public Safety and    65
Recreational Firearms Use Protection Act, 18 U.S.C. section 921(a)    66
(31) as appearing in such section on September 13, 1994. The term    67
"large capacity feeding device" shall not include an attached tubular    68
device designed to accept, and capable of operating only with, .22    69
caliber ammunition.    70

"Large capacity weapon", any firearm, rifle or shotgun: (i) that is    71
semiautomatic with a fixed large capacity feeding device; (ii) that is    72
semiautomatic and capable of accepting, or readily modifiable to ac-    73
cept, any detachable large capacity feeding device; (iii) that employs    74
a rotating cylinder capable of accepting more than ten rounds of am-    75
munition in a rifle or firearm and more than five shotgun shells in    76
the case of a shotgun or firearm; or (iv) that is an assault weapon.    77
The term "large capacity weapon" shall be a secondary designation    78
and shall apply to a weapon in addition to its primary designation as    79
a firearm, rifle or shotgun and shall not include: (i) any weapon that    80
was manufactured in or prior to the year 1899; (ii) any weapon that    81
operates by manual bolt, pump, lever or slide action; (iii) any    82
weapon that is a single-shot weapon; (iv) any weapon that has been    83
modified so as to render it permanently inoperable or otherwise ren-    84
dered permanently unable to be designated a large capacity weapon;    85
or (v) any weapon that is an antique or relic, theatrical prop or other    86
weapon that is not capable of firing a projectile and which is not in-    87
tended for use as a functional weapon and cannot be readily modified    88
through a combination of available parts into an operable large ca-    89
pacity weapon.    90

"Length of barrel" or "barrel length", that portion of a firearm, rifle,    91
shotgun or machine gun through which a shot or bullet is driven,    92
guided or stabilized and shall include the chamber.    93

"Licensing authority", the chief of police or the board or officer hav-    94
ing control of the police in a city or town, or persons authorized by    95
them.    96

"Machine gun", a weapon of any description, by whatever name    97
known, loaded or unloaded, from which a number of shots or bullets    98
may be rapidly or automatically discharged by one continuous activa-    99
tion of the trigger, including a submachine gun.    100

"Purchase" and "sale" shall include exchange; the word "purchaser" shall include exchanger; and the verbs "sell" and "purchase", in their different forms and tenses, shall include the verb exchange in its appropriate form and tense.   101 102 103 104

"Rifle", a weapon having a rifled bore with a barrel length equal to or greater than 16 inches and capable of discharging a shot or bullet for each pull of the trigger.   105 106 107

"Sawed-off shotgun", any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon as modified has one or more barrels less than 18 inches in length or as modified has an overall length of less than 26 inches.   108 109 110 111

"Semiautomatic", capable of utilizing a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and requiring a separate pull of the trigger to fire each cartridge.   112 113 114 115

"Shotgun", a weapon having a smooth bore with a barrel length equal to or greater than 18 inches with an overall length equal to or greater than 26 inches, and capable of discharging a shot or bullet for each pull of the trigger.   116 117 118 119

"Violent crime", shall mean any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or possession of a deadly weapon that would be punishable by imprisonment for such term if committed by an adult, that: (i) has as an element the use, attempted use or threatened use of physical force or a deadly weapon against the person of another; (ii) is burglary, extortion, arson or kidnapping; (iii) involves the use of explosives; or (iv) otherwise involves conduct that presents a serious risk of physical injury to another.   120 121 122 123 124 125 126 127 128

"Weapon", any rifle, shotgun or firearm.   129

Where the local licensing authority has the power to issue licenses or cards under this chapter, but no such licensing authority exists, any resident or applicant may apply for such license or firearm identification card directly to the colonel of state police and said colonel shall for this purpose be the licensing authority.   130 131 132 133 134

The provisions of sections 122 to 129D, inclusive, and sections 131, 131A, 131B and 131E shall not apply to:   135 136

(A) any firearm, rifle or shotgun manufactured in or prior to the year 1899;   137 138

(B) any replica of any firearm, rifle or shotgun described in clause (A) if such replica: (i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition; or (ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manu-   139 140 141 142

hap. 140]

)ur-    101
se",    102
nge    103
       104

l to    105
llet   106
       107

1er    108
.ed    109
.ed    110
       111

' a    112
he     113
ch     114
       115

th     116
or     117
et     118
       119

1t     120
1-     121
1-     122
t,     123
e      124
;      125
e      126
-      127
       128

       129

s      130
,      131
       132
       133
•      134

       135
       136

       137
       138

       139
       140
       141
       142

factured in the United States and which is not readily available in    143
the ordinary channels of commercial trade;  and    144

(C) manufacturers or wholesalers of firearms, rifles, shotguns or    145
machine guns.    146

## 140:121A.  Identification of firearms;  certificate by ballistics expert as prima facie evidence

Section 121A.  A certificate by a ballistics expert of the depart-    1
ment of the state police or of the city of Boston of the result of an ex-    2
amination made by him of an item furnished him by any police    3
officer, signed and sworn to by such expert, shall be prima facie evi-    4
dence of his findings as to whether or not the item furnished is a    5
firearm, rifle, shotgun, machine gun, sawed off shotgun or ammuni-    6
tion, as defined by section one hundred and twenty-one, provided    7
that in order to qualify as an expert under this section he shall have    8
previously qualified as an expert in a court proceeding.    9

## 140:122.  Licenses;  contents;  fingerprints of applicants;  procedure on refusal of license;  fees;  punishment for improper issuance

Section 122.  The chief of police or the board or officer having con-    1
trol of the police in a city or town, or persons authorized by them,    2
may, after an investigation into the criminal history of the applicant    3
to determine eligibility for a license under this section, grant a li-    4
cense to any person except an alien, a minor, a person who has been    5
adjudicated a youthful offender, as defined in section fifty-two of    6
chapter one hundred and nineteen, including those who have not re-    7
ceived an adult sentence or a person who has been convicted of a    8
felony or of the unlawful use, possession or sale of narcotic or harm-    9
ful drugs, to sell, rent or lease firearms, rifles, shotguns or machine    10
guns, or to be in business as a gunsmith.  Every license shall specify    11
the street and number of the building where the business is to be    12
carried on, and the license shall not protect a licensee who carries on    13
his business in any other place.  The licensing authority to whom    14
such application is made shall cause one copy of said applicant's fin-    15
gerprints to be forwarded to the department of the state police, who    16
shall within a reasonable time thereafter advise such authority in    17
writing of any criminal record of the applicant.  The taking of finger-    18
prints shall not be required in issuing a renewal of a license, if the    19
fingerprints of said applicant are on file with the department of the    20
state police.  The licensing authority to whom such application is    21
made shall cause one copy of such application to be forwarded to the    22
commissioner of the department of criminal justice information ser-    23
vices.  Any person refused a license under this section may within    24
ten days thereafter apply to the colonel of state police for such li-    25
cense, who may direct that said licensing authorities grant said li-    26